# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA         :
                                 :
    *versus*                      :    CRIMINAL NO. 22-49-BAJ
                                 :
CHRISTOPHER DON BYERLEY          :

## PLEA AGREEMENT

The United States Attorney's Office for the Middle District of Louisiana ("the United States") and Christopher Don Byerley ("the defendant") hereby enter into the following plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(A) and (C).

## A.    THE DEFENDANT'S OBLIGATIONS

### 1.    Guilty Pleas

The defendant agrees to enter a plea of guilty in Criminal Number 22-49-BAJ to Count Three of the Second Superseding Indictment charging him with knowing possession of an unregistered firearm silencer in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871, and the defendant agrees to admit to the forfeiture allegation. The defendant agrees to enter pleas of guilty in Criminal Number 24-0076-SDD to Count One and Count Three of the Indictment. Count One charges him with conspiracy to transport and cause to be transported a stolen motor vehicle in interstate commerce in violation of 18 U.S.C. § 2312; to tamper with, alter, remove and obliterate a vehicle identification number in violation of 18 U.S.C § 511; and to knowingly and with intent to defraud, possess fifteen or more unauthorized access devices affecting interstate commerce, in violation of 18 U.S.C. § 1029(a)(3), all in

violation of 18 U.S.C. § 371.  Count Three charges him with transporting and causing to be

transported a stolen motor vehicle in interstate commerce in violation of 18 U.S.C. § 2312.

The defendant agrees to admit to the forfeiture allegation. The defendant agrees to enter

pleas of guilty to Count One and Count Three of the Indictment in Criminal Number 25-

00013, Western District of Louisiana, Lafayette Division. Count One charges him with

conspiracy to traffick a firearm and to receive a trafficked firearm, in violation of 18 U.S.C. §

933(a) (1-3). Count Three charges him with receiving the trafficked firearm in violation of

18 U.S.C. § 933(a)(2).

The United States and the defendant agree to the transfer of Criminal Number 25-

00013, Western District of Louisiana, Lafayette Division, to the Middle District of

Louisiana for the plea and sentencing pursuant to Rule 20 of the Federal Rules of Criminal

Procedure.

## 2.    **Financial Information**

The defendant agrees to fully and truthfully complete the financial statement provided

to him by the United States and to return the financial statement to the United States within

ten days of this agreement being filed with the Court.  Further, the defendant agrees to

provide the United States with any information or documentation in his possession regarding

his financial affairs and to submit to a debtor's examination upon request.  Any financial

information provided by the defendant may be used by the United States to collect any

financial obligations imposed in this prosecution and may be considered by the Court in

imposing sentence.

B.     **UNDERSTATES' OBLIGATIONS**

1.     **Non-prosecution of Charges**

The United States agrees that, if the Court accepts the defendant's guilty pleas, it will move to dismiss the remaining counts in Criminal Number 22-49-BAJ, Criminal Number 24-0076-SDD and Criminal Number 25-00013, Western District of Louisiana, after sentencing, and it will not prosecute the defendant for any offense related to the offenses charged in these Indictments.

2.     **Motion for Third Point for Acceptance of Responsibility**

The United States acknowledges that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of his intention to enter pleas of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.  The United States therefore agrees that, if the Court finds that the defendant qualifies for a two-level decrease in offense level for acceptance of responsibility under USSG § 3E1.1(a) and, prior to the operation of USSG § 3E1.1(a), the defendant's offense level is 16 or greater, the United States will move the Court pursuant to USSG § 3E1.1(b) to decrease the defendant's offense level by one additional level.  The United States reserves the right to object to a decrease in the offense level under USSG § 3E1.1(a) based on any conduct that is inconsonant with the acceptance of responsibility, including failure to timely submit the financial statement required by Section A(2) of this agreement.

C.    **SENTENCING**

1.    **Maximum Statutory Penalties**

The maximum possible penalty on Count Three in Criminal Number 22-49-BAJ is a term of imprisonment of 5 years, a fine of up to $250,000, and a term of supervised release of three years.  The maximum possible penalty in Criminal Number 24-76-SDD on Count One is a term of imprisonment of 5 years, a fine of up to $250,000, and a term of supervised release of three years.  The maximum possible penalty on Count Three is a term of imprisonment of 10 years, a fine of up to $250,000, and a term of supervised release of three years.  The maximum possible penalty on Count One in Number Criminal Number 25-00013, Western District of Louisiana, is a term of imprisonment of 15 years, a fine of up to $250,000, and a term of supervised release of three years.  The maximum possible penalty on Count Three is a term of imprisonment of 15 years, a fine of up to $250,000, and a term of supervised release of three years.

In addition to the above, the Court must impose a special assessment of $100 per count which is due at the time of sentencing.  The Court may also order restitution.

2.    **Supervised Release**

Supervised release is a period following release from imprisonment during which the defendant's conduct is monitored by the Court and the United States Probation Office and during which the defendant must comply with certain conditions.  Supervised release is imposed in addition to a sentence of imprisonment, and a violation of the conditions of supervised release can subject the defendant to imprisonment over and above any period of

imprisonment initially ordered by the Court for a term of up to two years, without credit for any time already served on the term of supervised release.

### 3.    Sentencing Guidelines

The Court will determine in its sole discretion what the defendant's sentence will be. While the Court must consider the United States Sentencing Guidelines in imposing sentence, the Sentencing Guidelines are not binding on the Court.  The Court could impose any sentence up to the maximum possible penalty as set out above despite any lesser or greater sentencing range provided for by the Sentencing Guidelines.

### 4.    Sentencing

Pursuant to Fed. R. Crim. P. 11(c)(1)(c), the United States and the defendant agree that a term of imprisonment of 164 months is the appropriate disposition of the three cases. The United States reserves the right to present any evidence and information, and to make any argument, to the Court and the United States Probation Office regarding sentencing. Otherwise, except as set forth in this agreement and the supplement to the plea agreement, the United States makes no promises, representations, or agreements regarding sentencing.

### 5.    Forfeiture

The defendant admits that he owns the suppressor, ammunition and the FN Model 509 9mm handgun (S/N: GKS0239212), identified in the Notice of Forfeiture in the Indictments referenced in this plea agreement.  He therefore agrees to forfeit his interest in such property and consents to the entry of orders of forfeiture for such property.  The defendant admits he shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(5), all property, real and personal, that represents or is traceable to

Christopher Don Byerley Page 5   March 17, 2025

gross proceeds obtained directly or indirectly as a result of the conviction to Counts One and

Three in Criminal Number 24-0076-SDD.  If any of the above-described forfeitable property,

because of any act or omission of the defendant cannot be located upon the exercise of due

diligence; has been transferred or sold to, or deposited with, a third party; has been placed

beyond the jurisdiction of the Court; has been substantially diminished in value; or

has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p)

as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any

other property of the defendant up to the value of the forfeitable property described above.

The defendant understands that forfeiture of his property will not be treated as

satisfaction of any fine, restitution, cost of imprisonment, or other penalty which may be

imposed upon him as part of his sentence.  The defendant further understands that separate

and apart from his sentence in this case, the United States may also institute civil or

administrative forfeiture proceedings of any property, real or personal, which is subject to

forfeiture.  The defendant agrees to waive his interest in the property identified in the Notice

of Forfeiture in the Indictments referenced in this plea agreement in any such civil or

administrative forfeiture proceeding.

The defendant agrees to fully and truthfully disclose the existence, nature, and

location of all assets and to fully and completely assist the United States in the recovery and

forfeiture of all forfeitable assets, including taking all steps as requested by the United States

to pass clear title to forfeitable assets to the United States.  The defendant agrees to hold the

United States, its agents, and its employees harmless from any claims whatsoever in connection with the seizure or forfeiture of property pursuant to the Court's forfeiture orders. The defendant hereby waives the following: (1) all statutory and constitutional defenses to the forfeiture, including any claim that the forfeiture constitutes an excessive fine or punishment; (2) any failure by the Court to ensure at sentencing that the defendant is aware of the forfeiture or to incorporate the forfeiture in the judgment as required by Fed. R. Crim. P. 32.2(b)(4)(B); and (3) any failure by the Court to inform the defendant of, and determine that the defendant understands, the applicable forfeiture prior to accepting the defendant's plea.

**D.    FACTUAL BASIS**

The United States and the defendant stipulate to the following facts:

Cr-22:00049-BAJ-SDJ Middle District of Louisiana

On February 16, 2022, in Livingston Parish, within the Middle District of Louisiana, the defendant, CHRISTOPHER DON BYERLEY unlawfully possessed a firearm silencer. The silencer was not registered to the defendant in the National Firearms Registration and Transfer Record nor did the defendant affix a manufacturer's mark of identification, or a serial number on the silencer.

On February 16, 2022, Livingston Parish Sheriff's Office detectives were alerted to the Juban Crossing shopping center parking lot, in the Middle District, when they observed a white Ford F-550 truck that matched the description of the white Ford truck from a previously reported shoplifting theft on February 5, 2022.

There, detectives contacted the defendant, CHRISTOPHER DON BYERLEY, who was identified from his State of Louisiana issued identification card. Accompanying the defendant was his girlfriend, ADRIENNE KING.

Academy Sports and Outdoors surveillance photos submitted with the initial theft report on February 5, 2022, matched the description of the vehicle, BYERLEY and KING.

When questioned regarding the theft of February 5, 2022, KING admitted to stealing the merchandise items from the store. KING then completed a signed confession statement on a Livingston Parish Sheriff's Office Voluntary Statement Form.

Meanwhile, Detective Carl Childers observed from outside the truck, by looking through the windows and front windshield, several items of clothing that appeared to match the stolen merchandise. Detective Childers also clearly recognized a large black purse or bag on the passenger side of the truck. This bag was in KING's possession on February 5, 2022, and is clearly seen in the surveillance photos.

Detective Childers was assigned to the narcotics unit. Based on his experience and based on his observations, he suspected that KING was under the influence of some mind alerting substance.

Wishing to retrieve the stolen merchandise, Childers asked for consent to enter the truck from both BYERLEY and KING. Each refused with KING stating that all the stolen clothing was at her home in Maurice, Louisiana. BYERLEY claimed that the truck belonged to his boss Rob Brazell. Detective Childers then asked BYERLEY to contact Brazell to ask his consent. Using his own phone, BYERLEY sent a voice to text message to Brazell. Brazell did not respond.

A legally valid search warrant was then applied for and obtained through the 21st Judicial District Court authorizing the search of the interior of Ford truck.

During the search, approximately 16 clothing items, which matched the description of the clothing items stolen during the February 5, 2022, shoplifting incident were located throughout the vehicle. The clothing items were positively identified by the manager of Academy Sports and Outdoors with an approximate value of $326.43.

The black bag or purse was also searched and inside detectives found what appeared to be illegal narcotics and a device used to remove anti-theft security tags that retailers commonly affix to merchandise.

While recovering the suspected stolen clothing items from the back seat area of the vehicle, Detectives observed a box of 9mm handgun ammunition containing approximately 35 rounds of 9mm ammunition and an FN Model 509 9mm handgun magazine containing approximately 21 rounds of 9mm ammunition.

Detectives also located booster end caps in plain view. Based on their training and experience, they recognized that these two booster end caps are parts of a firearm silencer.

A computer inquiry at the scene revealed that both BYERLEY and KING were previously convicted felons.

Reasonably believing that the truck and several bags found inside may contain additional drugs, guns and a silencer, detectives applied for and were granted a second warrant through the 21st Judicial District Court.

The second search revealed a camouflage bag that contained suspected illegal drugs. A sentry safe key was located on a key ring inside the camouflage bag. The key fit a small sentry safe that was located on the rear floorboard of the vehicle behind the driver's seat. The safe, which was opened using the sentry safe key, contained an FN Model 509 9mm handgun (S/N: GKS0239212), a magazine with approximately 10 rounds of 9mm ammunition and two partially filled boxes of 9mm ammunition totaling 56 rounds.

A brown tactical-style backpack was in the rear passenger area of the vehicle. A further search of the backpack revealed a small black plastic box containing suspected methamphetamine residue and a box of Winchester ammunition that had approximately 200 rounds of 9mm ammunition. Also inside the backpack were personal papers (court records) for BYERLEY.

Additionally, found in the truck was a small red bag located in the driver's side map compartment. Inside the bag was a metal tube with threads on each end and several baffles. The baffles had holes drilled in their centers. When the baffles were placed into the tube and the two booster end caps were screwed on, one on each end, the result was a functional firearm silencer. The silencer could be properly attached to the FN Model 509 9mm handgun recovered from the safe within the truck.

Also, notebooks and calendars were seized from inside the truck. Notations made in one notebook and one calendar indicate that parts of a firearm silencer, specifically booster end caps and solvent trap cups also described as the baffles above, were expected to be delivered on certain dates. The notes and entries are in the defendant's handwriting.

A search of BYERLEY'S criminal history at the scene on February 16, 2022, revealed he has two prior felony drug convictions. He is therefore prohibited from possessing a firearm or ammunition under federal law.

Experts with the Bureau of Alcohol, Tabacco, Firearms and Explosives (BATF), Firearms Technology Criminal Branch, examined the metal tube with threads on each end, the baffles and the booster caps. BATF experts conclude that these features and characteristics are consistent with those of a firearm silencer and are designed to aid in capturing, cooling, diverting, diffusing, and slowing the hot gases created by burning propellant powder.

The BATF experts assembled the parts and tested the device. They concluded that the assembled parts recovered from the truck constitute a device for silencing, muffling, or diminishing the report of a portable firearm and, is a "firearm silencer" as defined by federal law. Furthermore, a check of the silencer showed no manufacturer's marks of identification, or a serial number as required by 26 U.S.C. § 5842, the National Firearms Act, nor was the silencer registered to the defendant in the National Firearms Registration and Transfer Record.

Therefore, the firearm silencer could not be lawfully possessed by the defendant on February 16, 2022, in Livingston Parish, within the Middle District of Louisiana.

<u>Cr 24: 00076-SDD-RLB Middle District of Louisiana</u>

Beginning on or about October 2021, and continuing to on or about March 31, 2022, in the Middle District of Louisiana and elsewhere, defendant CHRISTOPHER DON BYERLEY did knowingly conspire, confederate and agree with ROBERT GREGORY BRAZELL, ADRIENNE MARIE KING, DENNIS LOYD SIZEMORE and INDIVIDUAL A to transport and caused to be transported a stolen motor vehicle, a Kubota KX71-3 mini-excavator, in interstate; to tamper with, alter, remove and obliterate the vehicle identification number of a 2021 Ford 350 pickup truck; and to knowingly and with intent to defraud, possess fifteen or more unauthorized access devices affecting interstate commerce.

On or about December 18, 2021, the defendant and his co-conspirators sold to a company in Madison, Mississippi, a stolen mini-excavator knowing that prior to the sale the purchaser intended to transport, or cause to be transported, the stolen and altered mini-excavator out of the Middle District and the State of Louisiana, to be offered for sale at an auction in Alabama.

The defendant, and his co-conspirators BRAZELL, KING, SIZEMORE and INDIVIDUAL A, stole and aided and abetted each other in stealing motor vehicles. BRAZELL and the defendant researched and identified identification numbers that were "clean," i.e., not assigned to motor vehicles that were stolen or had bank liens, and that were the same makes and models as the motor vehicles they had stolen. BRAZELL, BYERLEY, KING, SIZEMORE, and INDIVIDUAL A replaced the factory-assigned identification numbers or serial numbers on the stolen vehicles with the "clean" numbers they had researched and identified.

BRAZELL, BYERLEY, KING, SIZEMORE, and INDIVIDUAL A obtained and utilized labels, stickers, decals, paint and other parts to alter the appearance of the stolen motor vehicles.
BYERLEY, KING and INDIVIDUAL A possessed and used heavy and construction equipment master keys to gain access to motor vehicles.

BYERLEY, KING and INDIVIDUAL A possessed vehicle burglary tools such as a "Slim Jim," and small inflatable air bags or wedges. The wedges, when inflated, create a gap between a vehicle door frame and the window, thereby allowing the Slim Jim to be inserted to unlock vehicle doors without use of a key.

BYERLEY, KING and INDIVIDUAL A possessed and used radio frequency detector equipment to examine stolen vehicles for the presence of "hidden bug" transmitters and global position trackers. They would remove any operating global position tracker from the stolen vehicles and discard them to prevent law enforcement from finding the stolen vehicles.

BYERLEY and KING possessed a faraday bag. A faraday bag is a container that is used to block electromagnetic fields or signals.

BYERLEY, KING and INDIVIDUAL A possessed a license plate flipper device, which allows two license plates, with a push of a button, to rotate 180 degrees, changing one plate to another within seconds.

BRAZELL, BYERLEY and SIZEMORE sometimes used the name "Hevyquip L.L.C." to make it appear they were legitimate businessmen when they sold stolen motor vehicles. BRAZELL and SIZEMORE sold stolen vehicles, cashed the checks, and distributed the profits and proceeds from the sales to their co-conspirators.

BRAZELL, BYERLEY, SIZEMORE, KING, and INDIVIDUAL A obtained and possessed unauthorized identification documents and access device information belonging to other individuals to be used to conceal their identities in furtherance of the conspiracy.

In early November 2021, BRAZELL signed a facility lease agreement for a metal building on Highway 42 in Livingston Parish, Louisiana, within the Middle District of Louisiana. The lease term was for $850 per month for six months. BRAZELL paid the first three months of the rent in cash. BRAZELL, BYERLEY, SIZEMORE, KING, and INDIVIDUAL A used this location as a chop shop where they replaced the factory assigned identification numbers or serial numbers on the stolen vehicles with the "clean" numbers they had researched and identified. Specifically, the following motor vehicles were stolen, altered and sold:

1.      a Kubota tractor, model M99600HDC, with assigned vehicle identification number 52681 stolen on or about November 16, 2021, from a location on Highway 44 in Ascension Parish, within the Middle District of Louisiana. It was transported to the chop shop, and its vehicle identification number was altered to 25253. The stolen and altered Kubota tractor was sold on December 3, 2021, by the defendant for $32,000 to a person in Kaplan, Louisiana. BRAZELL received a check as payment which he endorsed and cashed in Abbeville, Louisiana.

2.      a Kubota KX71-3 mini-excavator with assigned vehicle identification number 01H10294 stolen in or about late November or early December 2021 from a construction site in East Baton Rouge Parish, within the Middle District of Louisiana. It was transported to the chop shop and its vehicle identification number was altered to WKFRGN0100Z080587. The stolen and altered Kubota mini excavator was sold on December 18, 2021, by the defendant to a company in Madison, Mississippi, for $20,000. BRAZELL and SIZEMORE received a check as payment which they both endorsed and cashed in Abbeville, Louisiana. The defendant and his co-conspirators knew prior to the sale that the purchaser was an equipment broker who intended to transport, or cause to be transported, the stolen and altered mini-excavator out of the Middle District and the State of Louisiana, to be offered for sale at an auction in Alabama.

3.      a white 2021 Ford pickup truck, Model F350, assigned vehicle identification number (VIN) 1FD8W3HT1MED42210 and valued at approximately $56,000 stolen on December 21, 2021, from a vehicle rental agency in Lafayette, Louisiana by BYERLEY and INDIVIDUAL A. It was transported to the chop shop where BRAZELL and the defendant replaced the factory identification plate under the windshield and removed and replaced the factory certification label with VIN 1FDAW56R38EA18833 which was assigned to a 2008 model Ford

pickup truck. BYERLEY further altered the stolen 2021 Ford F350 pickup truck by replacing the front window, tinting the truck's windows, replacing the cold air intakes and adding a toolbox to the bed of the truck. Additionally, the defendant executed a bill of sale purporting to buy the 2008 model Ford truck which allowed him to obtain a title, a vehicle registration, license plate and insurance. The defendant and his co-conspirators then used the 2021 Ford pickup truck, Model F350, falsely labeled as a 2008 model in the theft of other motor vehicles and to travel in interstate commerce in furtherance of the scheme.

4.      a SkyJack forklift, model SJ843TH, with assigned serial number 87111832 stolen on or about December 31, 2021 from a rental agency on Airline Highway in Baton Rouge, Louisiana, within the Middle District of Louisiana. The SkyJack forklift was transported to the chop shop, and its vehicle identification number was altered to 87111892. The stolen and altered SkyJack forklift was sold on or about January 28, 2022, to an individual in Carencro, Louisiana, for $40,000. As payment for the purchase, SIZEMORE received a third-party check for $10,000 as a down payment which he endorsed and cashed in Abbeville, Louisiana.

5.      a Caterpillar mini-excavator Model 305.5c2 serial number CR505996 stolen on or about January 19, 2022, in St. Landry Parish from Hwy 190, Eunice, Louisiana. The Caterpillar mini-excavator's serial number was altered to CR505903. The stolen and altered Caterpillar mini-excavator was sold on or about January 26, 2022 for $30,000 with a bill of sale from Heavyquip L.L.C. using the municipal address of the chop shop. As payment for the purchase, SIZEMORE received a check dated January 28, 2022, payable to Heavyquip L.L.C. The defendant and SIZEMORE endorsed the check, and SIZEMORE cashed the check in Abbeville, Louisiana.

6.      a Bobcat excavator Model T430HAG serial number 563012748 and a twenty-two-foot utility trailer stolen in New Iberia, Louisiana, from South Lewis Street on or about January 20, 2022. The motor vehicle was valued at $24,500 and the trailer at $15,000. The Bobcat excavator serial number was altered to AACF11063, and it was sold on or about January 21, 2022, by SIZEMORE for $17,500 in cash.

7.      a John Deere tractor Model 5075E, product identification number 1PY5075EEGG400940 stolen in Lafayette, Louisiana, from a construction company on Verot School Road. The tractor's identification number was altered to 75EEKK408428, and it was sold on or about February 8, 2022. As payment for the purchase, SIZEMORE received a check for $15,000 which he endorsed and cashed in Abbeville, Louisiana.

BRAZELL, BYERLEY, KING, SIZEMORE and INDIVIDUAL A stole, unlawfully tampered with and altered motor vehicle identification and serial numbers of motor vehicles having a value of more than $250,000.

To further the sale of stolen motor vehicles and to conceal their involvement in such unlawful sales, the defendant and his co-conspirators agreed to produce and use fake identification documents. To that end and in furtherance of the scheme, they obtained and possessed with the intent to defraud, more than four 400 stolen and unauthorized means of identification of

individuals, including names, driver's license numbers, social security numbers, dates of birth and bank account numbers.

The defendant and his co-conspirators took head-shot Identification style photographs of themselves to be used in producing fake identification documents. Using a computer program, BRAZELL altered the photographs by changing hair styles and sometimes adding facial hair. The defendant and his co-conspirators then produced, and attempted to produce, fraudulent driver's licenses using the stolen and unauthorized means of identification.

Specifically, BRAZELL produced a Louisiana personal driver's license in the name of D.P with an address in Gonzales, Louisiana. The identification information on the license was valid, but the defendant placed an altered photograph of SIZEMORE on the face of the license. BRAZELL also produced a Louisiana personal driver's license in the name of S.B with an address in Duson, Louisiana. The identification information on the license was valid but an altered photograph of INDIVIDUAL A was put on the face of license. BRAZELL also produced a Texas driver's license in the name of M.P. with an address in Liberty, Texas. The identification information on the license was valid, but an altered photograph of INDIVIDUAL A was put on the face of license.

On February 8, 2022, the defendant and KING in furtherance of the scheme, traveled in interstate commerce from Louisiana to Texas with fake identification documents with the intent to obtain or rent warehouse or other industrial buildings in Houston for use as a chop shop.

The defendant and his co-conspirators intended to use the fake identification documents to sell stolen motor vehicles, to make purchases in interstate commerce, and to obtain or rent warehouse or other industrial buildings in Louisiana, Texas, and Mississippi to be used as chop shops.

<u>25-cr-00013 Western District of Louisiana, Lafayette Division</u>

Starting before and continuing from January 4, 2022, through February 16, 2022, in the Western District of Louisiana and elsewhere, the defendant, CHRISTOPHER DON BYERLEY, knowingly conspired, confederated and agreed with DENNIS LOYD SIZEMORE and ROBERT GREGORY BRAZELL, to traffic a firearm, that is a FN Model 509 9mm pistol bearing serial number GKS0239212 knowing or having reasonable cause to believe that BYERLEY was a prior convicted felon and prohibited from lawfully possessing firearms under federal and state law.

Prior to January 4, 2022, BYERLEY and BRAZELL visited gun stores in the Lafayette, Louisiana, area where they discussed and shopped for pistols that BYERLEY wanted and discussed ways to obtain firearms. SIZEMORE also participated in the discussions on ways to obtain firearms.

To further the conspiracy, SIZEMORE approached a person known to him as INDIVIDUAL A. INDIVIDUAL A is a vulnerable person who never owned or possessed a firearm. BYERLEY, SIZEMORE and BRAZELL knew that INDIVIDUAL A could be influenced into purchasing a firearm for BYERLEY. SIZEMORE influenced INDIVIDUAL A by saying that

he would teach INDIVIDUAL A to shoot and would provide the funds to INDIVIDUAL A for the purchase of a firearm.

On January 4, 2022, SIZEMORE contacted INDIVIDUAL A and told INDIVIDUAL A to meet him in the parking lot of a retail gun store in Lafayette, Louisiana, which is a holder of a federal firearms license. When INDIVIDUAL A arrived at the gun store, SIZEMORE was present along with BRAZELL.

SIZEMORE and BRAZELL walked INDIVIDUAL A into the gun store. SIZEMORE and BRAZELL chose the FN Model 509 9mm pistol, a pistol requested by the defendant, and SIZEMORE provided the money to INDIVIDUAL A to make the purchase. As INDIVIDUAL A began to fill out the necessary paperwork, SIZEMORE left the store and BRAZELL remained with INDIVIDUAL A. Upon completion of the purchase, INDIVIDUAL A left the gun store, and BRAZELL took the FN Model 9mm pistol from INDIVIDUAL A. Later that same evening through a text message, BRAZELL contacted BYERLEY telling the defendant that he had a pistol for sale. The text message included a picture of the FN Model 509 pistol in its original packaging.

Almost immediately, the defendant responded that he was on his way. At their meeting, in Lafayette Louisiana, in the Western District of Louisiana, BRAZELL transferred and otherwise disposed of the FN Model 509 9mm pistol by giving it to the defendant.

Days later, when INDIVIDUAL A asked SIZEMORE about the pistol, and in the presence of BRAZELL, SIZEMORE told INDIVIDUAL A that the gun had been stolen by "Chris" and that Chris had put a silencer on the pistol. SIZEMORE told INDIVIDUAL A not to file a police report.

BATF has determined that the FN Model 509 9mm handgun can accept high-capacity magazines and can expel a projectile by means of an explosive force and is therefore, a firearm as defined by federal law. The FN Model 509 was manufactured outside the State of Louisiana and therefore had, at some time, travelled in and affected interstate commerce.

The defendant admits that, to the best of his knowledge and belief, the stipulated statement of facts is true and correct in all respects. The United States and the defendant agree that, had this matter gone to trial, the United States could have proved such facts. The United States and the defendant further agree that such facts are sufficient to support conviction of the offenses to which the defendant has agreed to plead guilty. The defendant understands that, by the terms of USSG § 6B1.4, the Court is not limited by the stipulated facts for purposes of sentencing. Rather, in determining the factual basis for the sentence, the Court will consider

the stipulation, together with the results of the presentence investigation and any other relevant information.

## E.    BREACH AND ITS CONSEQUENCES

### 1.    Conduct Constituting Breach

Any of the following actions by the defendant constitutes a material breach of this agreement:

a.    failing to plead guilty to Count Three in Criminal Number 22-49-BAJ, Counts One and Three in Criminal Number 24-0076-SDD, and Counts One and Count Three in Criminal Number 25-00013, Western District of Louisiana, Lafayette Division, at re-arraignment;

b.    representing, directly or through counsel, to the United States or the Court that he will not plead guilty to Count Three in Criminal Number 22-49-BAJ,  Counts One and Three in Criminal Number 24-0076-SDD, and Counts One and Count Three of the Indictment in Criminal Number 25-00013, Western District of Louisiana, Lafayette Division;

c.    moving to withdraw his guilty pleas;

d.    filing an appeal or instituting other post-conviction proceedings not authorized in Section F(2);

e.    disputing or denying guilt of the offenses to which the defendant has agreed to plead guilty or denying or disputing any fact contained in the stipulated factual basis;

f.    providing false, misleading, or incomplete information or testimony, including financial information and testimony provided pursuant to Section A(2), to the United States; or

g.    violating the terms of this agreement or the supplement to the plea agreement in any other manner.

**2.    Consequences of Breach**

In the event of a breach by the defendant, the United States is relieved of its obligations under the agreement and the supplement to the plea agreement.  In particular, the United States may prosecute the defendant for any criminal offense.  In addition, any statements and information provided by the defendant pursuant to this agreement (or the supplement to the plea agreement) or otherwise, and any information and evidence derived therefrom, may be used against the defendant in this or any other prosecution or proceeding without limitation.  Such statements and information include, but are not limited to, the plea agreement itself (including the factual basis contained in Section D), the supplement to the plea agreement, statements made to law enforcement agents or prosecutors, testimony before a grand jury or other tribunal, statements made pursuant to a proffer agreement, statements made in the course of any proceedings under Rule 11, Fed. R. Crim. P. (including the defendant's entry of the guilty pleas), and statements made in the course of plea discussions. The defendant expressly and voluntarily waives the protection afforded by Fed. R. Evid. 410 as to any statements made by him personally (but not as to statements made by his counsel). The defendant is not entitled to withdraw his guilty pleas.

**3.    Procedure for Establishing Breach**

The United States will provide written notice to the defendant or his attorney if it intends to be relieved of its obligations under the agreement and the supplement to the plea agreement as a result of a breach by the defendant.  After providing such notice, the United States may institute or proceed with any charges against the defendant prior to any judicial determination regarding breach.  However, the United States will obtain a judicial

Christopher Don Byerley Page 16   March 17, 2025

determination regarding breach prior to using statements and information provided by the defendant or any act of producing documents or items by the defendant pursuant to this agreement or the supplement to the plea agreement, or any evidence or information derived therefrom, in its case-in-chief in a criminal trial or in sentencing the defendant in this case. The standard of proof in any proceeding to determine whether the plea agreement or the supplement to the plea agreement has been breached is preponderance of the evidence. To prove a breach, the United States may use (1) any and all statements of the defendant, (2) any and all statements of his counsel to the Court (including the United States Probation Office), and (3) any representation by defense counsel to the United States that the defendant will not plead guilty.

**F.     WAIVERS BY THE DEFENDANT**

    **1.     Waiver of Trial Rights**

By pleading guilty, the defendant waives the right to plead not guilty or to persist in a not guilty plea and waives the right to a jury trial. At a trial, the defendant would have the trial rights to be represented by counsel (and if necessary have the Court appoint counsel), to confront and examine adverse witnesses, to be protected against compelled self-incrimination, to testify and present evidence, to compel the attendance of witnesses, and to have the jury instructed that the defendant is presumed innocent and the burden is on the United States to prove the defendant's guilt beyond a reasonable doubt. By waiving his right to a trial and pleading guilty, the defendant is waiving these trial rights.

**2.      Waiver of Appeal and Collateral Remedies**

Except as otherwise provided in this section, the defendant hereby expressly waives the right to appeal his conviction and sentence, including any appeal right conferred by 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and to challenge the conviction and sentence in any post-conviction proceeding, including a proceeding under 28 U.S.C. § 2241, 28 U.S.C. § 2255, or 18 U.S.C. § 3582(c)(2).  This waiver applies to any challenge on appeal or in any post-conviction proceeding to any aspect of the defendant's sentence, including imprisonment, fine, special assessment, restitution, forfeiture or the length and conditions of supervised release or probation.  The defendant, however, reserves the right to appeal the following: (a) any sentence which is in excess of the statutory maximum; (b) any sentence which is an upward departure pursuant to the Sentencing Guidelines; and (c) any non-Guidelines sentence or "variance" which is above the guidelines range calculated by the Court.  Notwithstanding this waiver of appeal and collateral remedies, the defendant may bring any claim of ineffectiveness of counsel.

**3.      Waiver of Statute of Limitations**

The defendant hereby waives all defenses based on the applicable statutes of limitation as to all offenses charged in the Indictment and all offenses that the United States has agreed not to prosecute, as long as such offenses are not time-barred on the effective date of this agreement.  The defendant likewise waives any common law, equitable, or constitutional claim of pre-indictment delay as to such offenses, as long as such offenses are not time-barred on the effective date of this agreement.  The waivers contained in this paragraph will expire one year after the date of any of the following: (1) a judicial finding

that defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

### 4.    Waiver of Speedy Trial Rights

The defendant hereby waives any common law, equitable, or constitutional claim regarding post-indictment delay as to all offenses charged in the Indictment.  The waiver contained in this paragraph will expire one year after the date of any of the following: (1) a judicial finding that defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

## G.    EFFECT OF AGREEMENT

### 1.    Effective Date

This agreement and the supplement to the plea agreement are not binding on any party until both are signed by the defendant, defendant's counsel, and an attorney for the United States.  Once signed by the defendant, his counsel, and an attorney for the United States, the agreement and the supplement are binding on the defendant and the United States.

### 2.    Effect on Other Agreements

This agreement incorporates the supplement to the plea agreement which will be filed under seal with the Court.  In this district, the Court requires that a sealed supplement be filed with every plea agreement regardless of whether the defendant is cooperating.  The supplement either states that the defendant is not cooperating or provides the terms of the defendant's agreement to cooperate. This plea agreement, along with the aforementioned

supplement to the plea agreement, supersedes any prior agreements, promises, or understandings between the parties, written or oral, including any proffer agreement.

### 3.    Effect on Other Authorities

The agreement does not bind any federal, state, or local prosecuting authority other than the United States Attorney's Office for the Middle District of Louisiana.

### 4.    Effect of Rejection by Court

Pursuant to Fed. R. Crim. P. 11, the Court may accept or reject this plea agreement and the supplement to the plea agreement. If the Court rejects the plea agreement and the supplement, the plea agreement and the supplement are no longer binding on the parties and are not binding on the Court. If the Court rejects the plea agreement and the supplement, the defendant will be given the opportunity to withdraw his pleas and such withdrawal will not constitute a breach of the agreement. If the defendant does not withdraw his pleas following rejection of the plea agreement and the supplement, the disposition of the case may be less favorable to the defendant than contemplated by the plea agreement.

## H.    REPRESENTATIONS AND SIGNATURES

### 1.    By The Defendant

I, Christopher Don Byerley, have read this plea agreement and have discussed it with my attorney. I fully understand the agreement and enter into it knowingly, voluntarily, and without reservation. I have not been threatened, intimidated, pressured, or coerced in any manner. I am not under the influence of any substance or circumstance that could impede my ability to understand the agreement and its consequences.

I affirm that absolutely no promises, agreements, understandings, or conditions have been made, agreed to, or imposed by the United States in connection with my decision to plead guilty except those set forth in this agreement and the supplement to the plea agreement.

I acknowledge that no promises or assurances have been made to me by anyone as to what my sentence will be. I understand that representations by my attorney (or anyone else) regarding application of the Sentencing Guidelines and/or my possible sentence are merely estimates and are not binding on the Court.

I have read the Indictment and discussed it with my attorney. I fully understand the nature of the charges, including the elements.

I have accepted this plea agreement and agreed to plead guilty because I am in fact guilty of Count Three in the Indictment in Criminal Number 22-49-BAJ, Counts One and Three in the Indictment in Criminal Number 24-0076-SDD and Counts One and Count Three of the in Indictment in Criminal Number 25-00013, Western District of Louisiana, Lafayette Division.

I am satisfied with the legal services provided by my attorney and have no objection to the legal representation I have received.

_____          DATE: _3-20-25_
Christopher Don Byerley
Defendant

2.    **By Defense Counsel**

I have read the Indictment and this plea agreement and have discussed both with my client, Christopher Don Byerley, who is the defendant in this matter.  I am satisfied that the defendant understands the agreement and the charges against him, including the elements. I am also satisfied that the defendant is entering into the agreement knowingly and voluntarily. This agreement, together with the supplement to the plea agreement, accurately and completely sets forth the entire agreement between the defendant and the United States.

_____          DATE:_____
David Rozas
Eric H. Hayes
Counsel for Defendant

**By the United States**

We accept and agree to this plea agreement on behalf of the United States.  This

agreement, together with the supplement to the plea agreement, accurately and completely

sets forth the entire agreement between the defendant and the United States.

_____          DATE: 03/24/25 _____
April M. Leon
Acting United States Attorney
Middle District of Louisiana

_____          DATE: 3·25·2025 _____
Lyman E. Thornton III
Assistant United States Attorney
Middle District of Louisiana

_____          DATE: 3 - 25 - 25 _____
Mary Patricia Jones
Assistant United States Attorney
Middle District of Louisiana